**In re Cheryl A. CROWE, Debtor.**

**Jack Ferm, Appellant,**

v.

**United States Trustee, Appellee.**

**BAP No. NV–98–1728–RMaMe.**
**Bankruptcy No. 98–20151–RCJ.**
**Adversary No. 98–2129–RCJ.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 18, 1999.

Opinion Decided Dec. 3, 1999.

Amended Opinion Decided Jan. 6, 2000.

Jack Ferm, Las Vegas, NV, Pro se Appellant.

Barry H. Jenkins, Office of the United States Trustee, Las Vegas, NV, for the U.S. Trustee, Appellees.

Before: RUSSELL, MARLAR, and MEYERS, Bankruptcy Judges.

### AMENDED OPINION

RUSSELL, Bankruptcy Judge.

The United States Trustee filed an adversary proceeding against the appellant, a bankruptcy petition preparer, after he failed to comply with orders requiring him to disgorge fees and pay fines. The Trustee's complaint sought injunctive relief pursuant to 11 U.S.C. § 110,[1] which authorizes penalties for persons who negligently or fraudulently prepare bankruptcy petitions. Appellant did not file an answer and the Trustee moved for default judgment. The bankruptcy court entered judgment against appellant, enjoining him from acting as a bankruptcy petition preparer. This appeal followed. We AFFIRM.

### I. FACTS

The appellant, Jack Ferm, is a bankruptcy petition preparer in Las Vegas. Early in 1998, the debtor, Cheryl A. Crowe, engaged Ferm to handle her bankruptcy case, paying him $320 for his services. Crowe's chapter 13 petition and schedules were filed on January 8, 1998.

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

On February 26, 1998, the United States Trustee filed a motion for an order directing the disgorgement of fees paid to Ferm that exceeded the value of services rendered. The motion also requested an order directing Ferm to comply with the guidelines for petition preparers in the District of Nevada. While these guidelines, which became effective June 1, 1997, do not set fees, they prohibit a petition preparer from charging more than $150 for a chapter 7 case or $200 for a chapter 11, 12, or 13 case.

Ferm filed no response to the motion and failed to appear at the March 31, 1998 hearing. On April 13, 1998, Judge Robert Clive Jones entered an order (the "Crowe order") that directed Ferm to return to the debtor, within thirty days, the sum of $320, the entire fee charged by Ferm. The order also fined Ferm in the amount of $1,500, also due within thirty days. The court assessed $500 for failing to provide a copy of the repayment plan to the debtor, as required by § 110(d)(1). Additionally, Ferm's collection of the filing fee violated § 110(g)(1)'s ban on such conduct and drew a fine of $500. Finally, because a person other than the debtor signed her "Amendment to Bankruptcy Petition," the court levied a $500 penalty for violation of § 110(e)(1), which prohibits a petition preparer from executing a document on a debtor's behalf.

The hearing also resulted in orders requiring disgorgement and imposing fines on Ferm in connection with two other bankruptcy cases he had handled. Ferm neither appealed these orders nor the Crowe order. After he failed to comply with all three mandates, the U.S. Trustee filed a complaint (at issue in this appeal) for injunctive relief, pursuant to § 110(j).[2] The May 27, 1998 complaint sought to permanently enjoin Ferm from acting as a bankruptcy petition preparer in the District of Nevada. It also sought to require Ferm to comply with the aforementioned orders. Among the complaint's allegations was that Ferm had violated various provisions of § 110 in other cases.

Ferm neither filed an answer nor appeared at the scheduling conference held on June 29, 1998. He did, however, file a motion for recusal and disqualification of judges. In this motion, Ferm sought the disqualification of all California and Nevada Bankruptcy Judges, alleging that they were "known by all and are a part of an interstate conspiracy by and between California and Nevada." Ferm also filed a Special Appearance to Object to the Jurisdiction of the Bankruptcy Court. He did not attend the hearing on either of these matters. The recusal motion was denied and the objection to jurisdiction was overruled.

2. Section 110(j) provides in pertinent part:
**11 USC § 110. Penalty for persons who negligently or fraudulently prepare bankruptcy petitions**
(j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides ... may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.
(2)(A) In an action under paragraph (1), if the court finds that—
(i) a bankruptcy petition preparer has—
(I) engaged in conduct in violation of this section

.... and
(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.
(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I) ... of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not been paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.
11 U.S.C. §§ 110(j)(1), (2)(A)(i)(I), (2)(A)(ii), and (2)(B).

The U.S. Trustee moved for default judgment on July 23, 1998, and later moved for summary judgment as an alternative. Ferm opposed both motions, alleging, *inter alia,* that bankruptcy judges and attorneys were attempting to monopolize the Bankruptcy Court solely for attorneys and to maintain their excessive fees. He made no appearance at the August 25, 1998, hearing and the court granted the trustee's motion for default judgment. On September 30, 1998, the court entered judgment permanently enjoining Ferm from serving as a petition preparer. Ferm timely appealed.

## II. ISSUES

A. Whether the Crowe order was final and valid.

B. Whether the bankruptcy court had personal and subject matter jurisdiction in the U.S. Trustee's adversary proceeding.

C. Whether the bankruptcy court's order permanently enjoining Ferm from acting as a bankruptcy petition preparer violated his constitutional rights.

D. Whether the bankruptcy court abused its discretion by entering default judgment in favor of the U.S. Trustee.

## III. STANDARD OF REVIEW

■ We review *de novo* the bankruptcy court's acceptance of jurisdiction. *See In re ACI–HDT Supply Co.,* 205 B.R. 231, 234 (9th Cir. BAP 1997)(citing *In re Harris Pine Mills,* 44 F.3d 1431, 1434 (9th Cir.1995); *In re Castlerock Properties,* 781 F.2d 159, 161 (9th Cir.1986)). We will uphold the granting of a default judgment unless there was an abuse of discretion. *See In re Black,* 222 B.R. 896 (9th Cir. BAP 1998) (citing *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1391–92 (9th Cir.1988), *cert. denied,* 493 U.S. 858, 110 S.Ct. 168, 107 L.Ed.2d 124

(1989)). Under the abuse of discretion standard, the Panel "must have a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached,' before reversal is proper." *In re Tong Seae (U.S.A.), Inc.,* 81 B.R. 593, 597 (9th Cir. BAP 1988) (quoting *Mission Indians v. American Management,* 824 F.2d 710, 724 (9th Cir.1987)).

## IV. DISCUSSION

### A. *Validity of the Crowe Order*

■ It is first necessary to briefly address the validity of the Crowe order, entered on April 13, 1998. Ferm attacks this order as invalid. We disagree.

On March 31, 1998, the bankruptcy court held a hearing on the U.S. Trustee's motion for an order directing the disgorgement of fees charged by Ferm for his services in Crowe's bankruptcy case. The resulting order required Ferm to return his entire fee of $320 to Crowe and pay $1,500 in fines for various violations of § 110. By his own admission, Ferm chose to ignore the order. His brief states: "Ferm did not appeal because [the Attorney–Advisor to the U.S. Trustee] was filing numerous motions in an attempt to tie Ferm up in paperwork, and in continuous appeal costs. Ferm elected instead to treat the order as a nullity and all subsequent orders the same." Appellant's Opening Brief, p. 4.

The validity of the order can hardly be questioned. Section 110 permits a bankruptcy court to do exactly what the court did–require disgorgement and levy fines of not more than $500 per violation for failing to provide a copy of the repayment plan to the debtor, for collecting a filing fee from a debtor, and for executing a document on a debtor's behalf.

Ferm's pleadings show disrespect for the court.[3] Treating a final and valid or-

---

**3.** It is not only Ferm's pleadings that show disrespect for the court. Both his opening and reply briefs are replete with disparaging remarks. For example, Ferm states that

"Bankruptcy Judges are not real judges in a judicial setting." Appellant's Opening Brief, p. 15. He calls the Attorney–Advisor to the U.S. Trustee, "an incompetent bumbling at-

48

der as a "nullity" is frivolous. He had ample opportunity to challenge its factual basis, but failed to do so. His ill-fated attempt to reopen the matter must be rejected.

## B. Jurisdiction of the Bankruptcy Court

Ferm argues that the court lacked the power to impose sanctions in the U.S. Trustee's adversary proceeding. He also contends that the court was without personal jurisdiction. We disagree.

### 1. Bankruptcy Court's Power to Impose Sanctions

The United States District Court for the District of Nevada has issued Special Order 100,[4] which states in part that "[w]hen a non-lawyer petition preparer is alleged to be in violation of 11 U.S.C. § 110(b) through (g), the Bankruptcy Court shall find the facts and impose the fines set forth in those provisions." Special Order No. 100, United States District Court, District of Nevada ("Special Order No. 100"), § (a)(1). The order further provides that "[a]n action seeking an injunction under 11 U.S.C. § 110(j) shall be commenced in the Bankruptcy Court" and that "[t]he Bankruptcy Court shall find the facts and order an injunction." Special Order No. 100, §§ (b)(1) and (b)(2). The U.S. Trustee's complaint alleged violations of § 110 and sought injunctive relief under § 110.

Ferm challenges the court's power to impose sanctions on the ground that the court used § 110(j) as a vehicle to circum-

vent the holding in *Sequoia Auto Brokers, Ltd., Inc. v. Idell*, 827 F.2d 1281 (9th Cir. 1987). In *Sequoia*, the court addressed the question whether a bankruptcy judge has jurisdiction to issue a civil contempt order. *Sequoia Auto Brokers*, 827 F.2d at 1283. It held that a bankruptcy judge lacks contempt jurisdiction because no inherent or statutory authority granted it. *Id.* at 1290–91.

Ferm's analogy to *Sequoia* is ill-advised because, as was recognized by the court in *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir.1996), two significant changes have occurred since the decision in *Sequoia*. First, in 1987, Congress reformed Bankruptcy Rule 9020 to read:

(a) **Contempt Committed in Presence of Bankruptcy Judge.** Contempt committed in the presence of a bankruptcy judge may be determined summarily by a bankruptcy judge. The order of contempt shall recite the facts and shall be signed by the bankruptcy judge and entered of record.

(b) **Other Contempt.** Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subsection (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense.

. . . .

torney who works for the U.S. Trustees, and who could not make a living in private practice." Appellant's Reply Brief, p. 3. He continues: "On information and belief, Ferm alleges that [the Attorney–Advisor to the U.S. Trustee] has trouble spelling his own name." *Id.* In addition to such remarks, Ferm repeatedly makes outrageous, unsubstantiated allegations, such as: that judges and attorneys "are manipulating the Bankruptcy Code and violating the expressed law, in order to form an unlawful monopoly in the Bankruptcy system to maintain high legal fees for their

friends who are attorneys." Appellant's Opening Brief, p. 6. We also note that the arguments in Ferm's briefs contain no citations to the record, which is a violation of Federal Rule of Appellate Procedure 28(a)(9)(A).

4. Special Order 100 has been superseded by the District of Nevada's Local Rule of Bankruptcy Practice 9011, which restates the language of the order.

FED. R. BANK. P. 9020. Thus, the *Rainbow* court stated, the power that it noted (in *Sequoia*) did not exist under the Bankruptcy Code prior to 1987 was given to the bankruptcy courts by the modified Rule 9020. *Rainbow,* 77 F.3d at 284.

The second important post–1987 change noted by *Rainbow* was the Supreme Court's decision in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). *Id.* As *Rainbow* acknowledged, *Chambers* recognized that courts created by Congress, such as bankruptcy courts, have inherent powers unless Congress intentionally restricts those powers. *Id.* (quoting *Chambers,* 501 U.S. at 47, 111 S.Ct. 2123). Significantly, the *Rainbow* court advised that the adoption of Rule 9020 by Congress and the subsequent opinion in *Chambers* superseded its opinion in *Sequoia. Id.* at 285. *Sequoia,* then, can furnish no basis for Ferm's challenge to the court's jurisdiction.

Even if *Sequoia* were legitimate authority, it would not support Ferm's challenge because it is readily distinguishable from his case. *Sequoia* held that a bankruptcy judge lacks contempt jurisdiction in the absence of inherent or statutory authority. *Sequoia Auto Brokers,* 827 F.2d at 1290–91. In the instant case, however, there is statutory authority for the court's jurisdiction. Indeed, the injunctive relief imposed by the court is specifically authorized by § 110(j). Thus, the U.S. Trustee argues correctly that the holding in *Sequoia* is inapposite.

**5.** The debtor's testimony demonstrates that Ferm was charging for his services before the order was issued:

[ATTORNEY–ADVISOR TO THE U.S. TRUSTEE]: Okay. Did you hire Mr. Ferm to prepare your petition and schedules in this case?
MS. CHERYL CROWE [THE DEBTOR]: You mean do a bankruptcy for me?
[ATTORNEY–ADVISOR TO THE U.S. TRUSTEE]: Yes.
MS. CROWE: Yes.
[ATTORNEY–ADVISOR TO THE U.S. TRUSTEE]: Did you pay him for his services?
MS. CROWE: Yes, I did.

## 2. *Personal Jurisdiction*

■ Section 110 defines "bankruptcy petition preparer" as a "person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." § 110(a)(1). Ferm contends that he was not a bankruptcy petition preparer within the meaning of § 110 because he stopped preparing bankruptcy petitions for a fee after the Crowe order was issued, and thereafter began selling only an instructional book.[5] Based on this contention, he concludes that he was "not under the supervision of the Bankruptcy Court." Appellant's Opening Brief, p. 4. We disagree.

The crux of Ferm's contention is that he is a book author, not a petition preparer. Ferm sells a book entitled "Do It Yourself Bankruptcy." This book guarantees to its readers that "[i]f you buy my book and can't complete the forms yourself, I will do it for free." Appellant's Opening Brief, p. 14. As a book author only, Ferm maintains, the bankruptcy court cannot enjoin him from an activity in which he was not engaged—the preparation of bankruptcy petitions for a fee.

At this stage, it is helpful to review the breadth of the judgment against Ferm. Not only does it enjoin him or his agents from acting as a petition preparer, but also from:

[m]aking any representation in conjunction with the sale of any book, pamphlet

[ATTORNEY–ADVISOR TO THE U.S. TRUSTEE]: How much did you pay him?
MS. CROWE: It was almost five hundred dollars, but—
[ATTORNEY–ADVISOR TO THE U.S. TRUSTEE]: Was part of that—
MS. CROWE:—part of that was the court fees, filing fees?
[ATTORNEY–ADVISOR TO THE U.S. TRUSTEE]: It was the filing fee?
MS. CROWE: Yeah. His—I think his fee was three-twenty or three-eighty.
Transcript of Hearing on Motion of the U.S. Trustee for an Order Directing the Disgorgement of Fees Paid to the Petition Preparer, Jack Ferm, March 31, 1998, pp. 11–12.

or other publication concerning bankruptcy relief, whether orally or in writing, with or without compensation, to provide, in addition to the price of such publication, any guidance, instruction, assistance or other service, whether directly or indirectly, with regard to the preparation of any document for filing within the meaning of § 110(a)(2) in connection with any actual or potential case under title 11.

Judgment, September 30, 1998.

The judgment's language reflects that the selling of Ferm's book is tantamount to serving as a petition preparer, which makes Ferm subject to the provisions of § 110. Ferm's characterization of himself as an author is a disingenuous attempt to sidestep the "for compensation" component of the definition of petition preparer under § 110(a). He is exactly such; the book is a mere front for his services. Because what he really sells are his services, Ferm is subject to the court's jurisdiction for violations of § 110.

### C. *Ferm's Constitutional Claims*

Ferm argues repeatedly that the bankruptcy court's order enjoining him from serving as a petition preparer infringes on his First Amendment right to free speech. We note that this and Ferm's other constitutional concerns appear below only in his opposition to the U.S. Trustee's motion for summary judgment. Nevertheless, we discuss them for purposes of completeness.

■ To repeat, what Ferm really sells are his services, not his books. Thus, there has been no constitutional infringement on his First Amendment rights. Furthermore, Ferm has no constitutional right to earn a living as a bankruptcy petition preparer, as he argues. This is especially true in light of his failure to disgorge fees and pay fines pursuant to the bankruptcy court's initial order.

Ferm's final constitutional contention is that "[t]he holding of the Ninth Circuit . . . in *In re Laorphus Crawford* . . . will void

USC § 110(c)(1)(2) as unconstitutional." Appellant's Reply Brief, pp. 4–5. Among the allegations in the U.S. Trustee's complaint was that Ferm had previously violated § 110(c), which requires a bankruptcy petition preparer to include his social security number on documents submitted to the bankruptcy court. In *In re Laorphus Crawford*, 194 F.3d 954 (9th Cir.1999), Ferm alleged, as he did in this case, that § 110(c) violated his constitutional rights to privacy and equal protection. The Ninth Circuit, however, disagreed, and held that § 110(c) was within constitutional limits. *Laorphus Crawford*, 194 F.3d at 960–62.

### D. *The Default Judgment*

■ In reviewing the bankruptcy court's entry of default judgment, we note first that the court had legal authority to enter default. See FED.R.BANK.P. 7055. The court did so after Ferm failed to answer or appear at the hearing on the U.S. Trustee's complaint seeking to permanently enjoin him from acting as a bankruptcy petition preparer. What he did file were not answers, but instead a motion for recusal and disqualification of judges; a Special Appearance to Object to the Jurisdiction of the Bankruptcy Court; and an opposition to the motion for default. Ferm's responses indicate that he had actual notice of the filing of the complaint and such notice is evident from the record.

■ A default judgment will not be distrubed if: (1) the defendant's culpable conduct led to the default; (2) the defendant has not meritorious defense; or (3) the plaintiff would be prejudiced if the judgment is set aside. *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988), *cert. denied*, 493 U.S. 858, 110 S.Ct. 168, 107 L.Ed.2d 124 (1989) (citations omitted). " 'If a default judgment is entered as the result of a defendant's culpable conduct, however, we need not consider whether a meritorious defense was shown, or whether the plaintiff would suffer prejudice if the judgment

were set aside.' " *Id.* (citations omitted). A party's conduct is culpable if he has received actual notice of the filing of an action and failed to answer the complaint. *In re Van Meter,* 175 B.R. 64, 67 (9th Cir. BAP 1994) (citing *Gregorian v. Izvestia,* 871 F.2d 1515, 1523 (9th Cir.1989), *cert. denied,* 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989)). The record reveals that Ferm's conduct is culpable and under the circumstances, we cannot say that the court abused its discretion in entering the default judgment.

## V. CONCLUSION

The bankruptcy court properly exercised jurisdiction over the U.S. Trustee's adversary proceeding. Having actual notice of the complaint, Ferm elected to make no answer or appearance and, as a result, incurred a default judgment. Because such judgment was due to his culpable conduct, we cannot say that the court abused its discretion in entering default in the U.S. Trustee's favor. Additionally, Ferm's constitutional arguments are without merit. We AFFIRM.